**Calvin Coolidge GREENE, Plaintiff,**

v.

**WHIRLPOOL CORPORATION, Defendant.**

**No. C–C–79–329–M.**

United States District Court, W. D. North Carolina, Charlotte Division.

May 7, 1982.

---

C. Michael Wilson, Gerdes, Mason, Brunson & Wilson, Charlotte, N. C., for plaintiff.

John T. Allred, Moore & Van Allen, Charlotte, N. C., for defendant.

## ORDER DENYING MOTION TO DISMISS FOR FAILURE TO FILE TIMELY CHARGE

McMILLAN, District Judge.

This action under the Age Discrimination in Employment Act was tried before this court and a jury beginning on March 22, 1982, and ending on March 25, 1982, when plaintiff received a jury verdict in his favor on all issues.

Defendant had earlier moved to dismiss plaintiff's complaint on the ground that plaintiff had failed to comply with the notice requirements of 29 U.S.C. § 626(d). That section requires a plaintiff to file a charge alleging unlawful discrimination with the Secretary of Labor within 180 days of the alleged discriminatory act. This court concluded that the plaintiff had complied with the provisions of Section 626(d) and in an order filed May 9, 1980, to which specific reference is made, denied defendant's motion to dismiss.

At trial, at the close of the plaintiff's evidence, the defendant moved for a directed verdict pursuant to Rule 50 of the Federal Rules of Civil Procedure, on the ground that the plaintiff had failed to comply with the 180-day notice requirement of Section 626(d), and that the evidence was insufficient to support findings of discrimination. Defendant renewed said motions at the close of all the evidence. (The parties stipulated that the mixed questions of fact and law presented by defendant's motion for a directed verdict because of alleged failure to comply with § 626(d) would be heard and decided by the court.)

The court, sitting without a jury, finds as facts and concludes as matters of law:

Plaintiff was discharged from his job with defendant on October 31, 1977, and his

age was a causative or determining factor—a "but for" factor—in the defendant's decision to discharge him. Defendant's discriminatory conduct toward plaintiff was wilful and plaintiff's discharge was not effected in good faith.

Following his discharge, the plaintiff, in November, 1977, went to the Charlotte office of the United States Department of Labor, where he met with Mr. Bob Smith. The plaintiff told Mr. Smith at that time that he had been fired from his job with Whirlpool Corporation on October 31, 1977, when he was just above the age of 55 years. The plaintiff further told Mr. Smith that he thought that the defendant had discharged him because of his age and that the defendant had discriminated against him because of his age. Mr. Smith received this information from the plaintiff and at that time told him to return to the Department of Labor when he had obtained evidence or information that the defendant had wilfully discharged him because of his age, and that he had two years from the time he was fired within which to do so. Mr. Smith further told the plaintiff that he would mail him a booklet about the Age Discrimination in Employment Act because the Department of Labor was out of such booklets at the time. (Mr. Smith did thereafter mail to Mr. Green such a booklet but the evidence does not show that Greene read and understood it, nor that, absent knowledge that defendant's actions were wilful, he should have known from the booklet that he had to file a charge right away.) Mr. Greene left the Department of Labor reasonably believing he had filed a charge alleging unlawful discrimination due to age.

Plaintiff retained counsel in September, 1979. He did not obtain or learn of any evidence that the defendant had wilfully discharged him because of his age until a few weeks before the trial in October, 1979, of the case known as *Spagnuolo v. Whirlpool Corporation*, 467 F.Supp. 364 (W.D.N. C.1979), 641 F.2d 1109 (4th Cir. 1981). The first evidence Mr. Greene had as to wilful action by the defendant was obtained by him in September and October, 1979, by reading the depositions taken in the *Spag-*

nuolo case and talking to persons involved in that case. Mr. Greene then returned to the Department of Labor, where he informed Mr. Fred Carlock of the Charlotte Office of the United States Department of Labor of the evidence of the wilfulness on the part of the defendant which he had learned from the *Spagnuolo* case. Mr. Greene thereafter filed this suit, on October 26, 1979, five days before the two-year statute of limitations ran.

■ Section 626 of the ADEA requires that:

Every employer ... shall post and keep posted in conspicuous places upon its premises a notice to be prepared or approved by the Secretary setting forth information as the Secretary deems appropriate to effectuate the purposes of this Chapter.

The court finds that defendant knew of this posting requirement, but nevertheless wilfully failed, during the years 1977 through 1979, to post and keep posted on its premises in Charlotte, North Carolina, the required notices.

Section 626(d) of the ADEA, as amended in 1978, reads as follows:

(d) No civil action may be commenced under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; . . . .

This amended version is effective "with respect to civil actions brought after the date of enactment of this act" (April 6, 1978). Public Law 95–256, Section 4(b)(2). Hence, it is applicable to this case, which was filed on October 26, 1979.

The Supreme Court recently held that the 180-day time limit for filing a charge of discrimination under Title VII is not jurisdictional, but is in the nature of a statute of limitations, and therefore subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.,* —— U.S. ——, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Congress intended the ADEA filing require-

ment also to be non-jurisdictional, and the courts have followed this view. *See* Conference Report on the 1978 Amendments to the ADEA, which states that

The "charge" requirement is not a jurisdictional prerequisite to maintaining an action under the ADEA and therefore equitable modification for failing to file within the time period will be available to plaintiffs under the Act. 1978 U.S.Code Cong. and Admin.News 528.

*See also Wright v. State of Tennessee*, 628 F.2d 949, 952–53 (6th Cir. 1980) (*en banc*), and cases cited therein.

■ The ADEA is remedial and humanitarian legislation. Congress gave to the courts the power "to grant such legal or equitable relief as may be appropriate to effectuate the purposes" of the act. 29 U.S.C. § 626(b). This court concludes, therefore, that (1) plaintiff filed a charge of discrimination in November, 1977, in his first visit to the Department of Labor; (2) the 180-day time period for filing a charge was tolled by the defendant's failure to post required notices of ADEA rights; (3) this period did not begin to run until September, 1979, after plaintiff retained an attorney and acquired actual knowledge of his rights under the Act; and (4) plaintiff filed a second timely charge of discrimination in October, 1979, when he complained to the Labor Department a second time. *See, e.g., Jennings v. American Postal Workers' Union*, 672 F.2d 712, 28 FEP Cases 518 (8th Cir. 1982) (Title VII case applying *Zipes* to construe employee's visit to the EEOC as the filing of a charge); *Dartt v. Shell Oil Company*, 539 F.2d 1256, 1260 (10th Cir. 1976).

Plaintiff complied with the provisions of § 626(d). Defendant's motion for a directed verdict on this ground is DENIED. The court will not re-phrase the analysis in its order of May 9, 1980, which has been incorporated by reference in this order. However, as stated in the May 9, 1980 order:

In this case [*Spagnuolo v. Whirlpool*], Mr. Spagnuolo filed a claim within the period during which Mr. Greene's filing was required under the statute. The in-

formation on which Mr. Greene might have based a decision to go to the Labor Department again and pursue the claim in some more aggressive manner was not accessible to Mr. Greene. Even lacking the knowledge of his supervisor's sworn testimony that Greene had been fingered for a fabricated bad work record and eventual firing because of his age, Mr. Greene went to Labor and told them he felt he had been fired because of his age. There is no evidence that Mr. Greene was not in good faith either in posing his initial complaint or in deciding not to do more.

Whirlpool has been in court and has investigated and litigated the web of facts surrounding the firings or demotions of Mr. Spagnuolo, Mr. Greene and one further employee (Vance). Mr. Spagnuolo testified under oath that he had been told to fire Greene on trumped up evaluations because of Greene's age; it is hardly remarkable that Mr. Spagnuolo felt justified in filing charges against Whirlpool in no uncertain terms. Mr. Greene, a lower echelon employee who had no one to fire and no management friends who were privy to higher-level conversations, went no further than to complain in person to the Department of Labor. He went far enough.

■ Defendant also contends the evidence was not sufficient to support a verdict of age discrimination. I cannot agree; the evidence of age discrimination, both direct and circumstantial, was strong; and the jury reached the correct result.

ACCORDINGLY, IT IS THEREFORE ORDERED:

1. This court has jurisdiction over this action.

2. There was ample evidence of unlawful discrimination against plaintiff based on his age.

3. There was sufficient compliance by the plaintiff with the 180-day notice period of Section 626(d) to accomplish the statutory purpose of that section and the plaintiff filed a timely charge alleging unlawful dis-

crimination during his first visit to the Department of Labor in November, 1977.

4. The 180-day notice period of Section 626(d) of the Age Discrimination in Employment Act is equitably tolled until September of 1979, and the plaintiff filed a second charge alleging unlawful discrimination during his second visit to the Department of Labor in October of 1979.

5. The defendant's motion for directed verdict is denied.

### ORDER ALLOWING ATTORNEYS' FEES

On this date, this court is entering a final judgment on the jury's verdict in favor of plaintiff in this action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Plaintiff's attorneys have filed a petition for an award of attorneys' fees and costs under 29 U.S.C. § 626(b) and § 216(b). Plaintiff is the prevailing party and is entitled to fees under these sections of the statute.

Plaintiff's primary trial counsel, Mr. C. Michael Wilson, has submitted an affidavit which itemizes the time spent and the costs that plaintiff's counsel have incurred. Both parties have briefed the issue of fees.

█ In setting an attorney's fee under the Age Discrimination in Employment Act, the court is required to consider the twelve guidelines for setting fee awards in Title VII actions. *See Spagnuolo v. Whirlpool,* 641 F.2d 1109, 1115 (4th Cir. 1981); *Walston v. School Board,* 566 F.2d 1201, 1204–05 (4th Cir. 1977). These guidelines were originally set out in the case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.,* 577 F.2d 216 (4th Cir. 1978).

In the recent case of *Anderson v. Morris,* 658 F.2d 246 (4th Cir. 1981), the Fourth Circuit reviewed the manner in which the *Johnson* factors are to be applied by the district court. A base amount for the fee award is to be determined by multiplying the number of hours reasonably expended on the case by the customary hourly rate of compensation (*Johnson* factors one and five). This amount may then be adjusted by the court upward or downward on the basis of the other ten *Johnson* factors to determine the final fee award.

1. *The time and labor expended.*—The affidavit of plaintiff's counsel demonstrates that, through the trial, which was concluded on March 25, 1982, three attorneys have worked a total of 468¾ hours on this case. There does not appear to have been any duplication of effort by the attorneys.

5. *Customary fee for like work.*—Plaintiff's attorneys have requested fees of $75.00 per hour for Mr. C. Michael Wilson, $75.00 per hour for Mr. James L. Mason, and $100.00 per hour for Mr. Phillip E. Gerdes. These rates are within the range of charges customarily made in this area for similar work.

The court thus determines initially that plaintiff is entitled to attorneys' fees of $35,356.25 (460¼ hours at $75 an hour plus 8 hours at $100 an hour).

2. *The novelty and difficulty of the questions raised.*—This case involved several unsettled legal questions, such as whether, under recent case law, plaintiff had met the statutory requirement that he file an administrative charge of discrimination prior to filing suit. In addition, the case involved sharply contested factual questions, which required plaintiff's attorneys to compile and present an extensive factual record. This factor justifies an upward adjustment of the fee award.

3. *The skill required.*—Plaintiff's attorneys were required to do extensive discovery, organize a substantial factual record, and conduct a four-day trial. In addition, they were required to brief and argue several difficult issues of law. Their work reflected a high level of skill and competence. The fee award is to be adjusted upward on the basis of this factor.

4. *The preclusion of other employment by the attorneys because they handled this case.*—This case has been pending for over two and a half years, and has precluded other employment by counsel to the extent that they devoted 468¾ hours to it.

6. *Whether the fee is fixed or contingent.*—This is a contingent fee case. The risks inherent in contingency fee litigation justify an upward adjustment in the attorneys' fee award.

7. *Time limitations imposed by the client or the circumstances.*—This factor does not seem particularly relevant.

8. *The amount involved and the results obtained.*—Plaintiff was vindicated by the jury's verdict on his claim of wrongful discharge. He has recovered $56,000.00 in lost income as a result of the wrongful discharge, as well as liquidated damages of $56,000.00 based upon the jury's finding (which the court adopts) that the actions of the defendant in discharging the plaintiff were wilful. In addition, the court has ordered that plaintiff be reinstated to the Charlotte territory sales position which he held prior to his demotion and discharge, with all financial and other benefits of that position. The court concludes from these results that plaintiff fully prevailed on his claims in this lawsuit. The fee award will be adjusted upward on the basis of this factor.

9. *Experience, reputation and ability of the attorneys.*—Plaintiff's attorneys are members of a five-man firm in Charlotte. Mr. Wilson, plaintiff's primary trial attorney, was admitted to the North Carolina Bar in 1976. Mr. Mason was admitted in 1972, and Mr. Gerdes was admitted in 1964. These attorneys have had substantial experience, and have tried many cases. They reflected this experience in the competent and able manner in which they tried this case.

10. *The undesirability of the case.*—Cases involving discrimination claims frequently arouse animosities. This case was no different. Such cases are often more taxing on the attorneys outside the courtroom than within it. They require arduous labor and tremendous dedication. An upward adjustment is called for to reward plaintiff's counsel for their willingness to handle this case, and to encourage other attorneys to handle similar cases in the future.

11. *The nature and length of the professional relationship with the client.*—Plaintiff appears to be a one-time client for this case only. This factor has no effect on the award.

12. *Awards in similar cases.*—The award in this case is within the reasonable range of fees previously allowed in similar cases.

 The combined effect of these factors justifies an upward adjustment of attorneys' fees. The court finds reasonable attorneys' fees in this case to be $42,500.00.

Plaintiffs are also entitled to recover witness expenses, costs of depositions, copying, long distance telephone calls, and other miscellaneous expenses in the amount of $1,129.39.

IT IS THEREFORE ORDERED that defendant pay to plaintiff's counsel the following sums:

| | |
|---|---|
| Attorneys' fees | $42,500.00 |
| Expenses | 1,129.39 |
| Total | $43,629.39 |